Leonard B. Berkoski, Petitioner *v.* Workmen's Compensation Appeal Board (Atlas Chain & Precision Products Company et al.), Respondents.

Submitted on briefs November 18, 1982, to Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Joseph P. Giovannini, Jr., Winkler, Danoff and Lubin,* for petitioner.

*Joseph P. Lenahan, Lenahan & Dempsey, P.C.,* for respondent, Atlas Chain & Precision Products Company and Bucyrus Erie Company.

OPINION BY JUDGE BLATT, April 29, 1983:

Leonard B. Berkoski (claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which reversed the referee's decision modifying a supplemental agreement entered into between the claimant and his employer.

The claimant sustained a back injury during the course of his employment on May 20, 1970, and he received compensation for total disability from June 5, 1970 through October 25, 1970, at which time he re-

turned to work.[1] On April 11, 1973, he filed a petition for reinstatement of compensation, alleging that he had again become disabled on June 30, 1972. Thereafter, on August 16, 1973, the claimant and his employer entered into a supplemental agreement, which provided for the payment of compensation from July 8, 1972 for an indefinite period of time, at the rate of $60 per week.

Subsequently, in 1979, when talking with an insurance adjuster for the Kemper Insurance Co., the claimant became aware that, if he had suffered a "new" injury in 1972, he "could [now] be getting more" than $60 per week. Thereafter, on June 1, 1979, he filed a petition for review of the supplemental agreement, pursuant to Section 413 of The Pennsylvania Workmen's Compensation Act[2] (Act), alleging that a mistake of fact had existed at the time that the supplemental agreement was executed. He contended, and the referee found, that he had suffered a *new* injury on June 30, 1972, as opposed to a recurrence of his injury of May 20, 1970, and, therefore, that he was entitled to compensation at the rate of $106 per week, the rate in effect at the time of the 1972 injury. The Board, however, reversed the referee's decision concluding that the referee had erred in finding that the claimant had suffered a new injury.[3]

The issue before us is whether or not the referee's finding that the supplemental agreement was based on

[1] The record indicates that as of October 25, 1970, the Claimant, although partially disabled, was able to return to work without any loss of earning power and, therefore, the case was placed in suspension as of October 14, 1971.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §771.

[3] The Board also concluded that, in any case, the claimant's claim relating to a new injury was barred by the three-year statute of limitations of Section 315 of the Act, 77 P.S. §602, however, we need not address this issue inasmuch as we are resolving this case based upon another issue.

a mistake of fact is supported by substantial evidence in the record.[4]

Section 413 of the Act gives a referee the power, at any time, to review and modify or set aside a supplemental agreement if "it be proved that such . . . agreement was in any material respect incorrect." The claimant, as the party seeking to modify the agreement, has the burden of establishing the allegations upon which he relies. *Wilkes-Barre Iron & Wire Works, Inc. v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 612, 309 A.2d 172 (1973). And here, where the claimant is contending that the supplemental agreement was incorrect in a material respect, based on an alleged mistake of fact existing when the said agreement was executed, his burden is to prove this allegation of mistake. *Id.*

After a thorough review of the record, we note that the claimant offered *no* evidence to support his contention that the supplemental agreement was incorrect in a material respect. The claimant, of course, has alleged that "there was a mistake somewhere," but he has not supported this allegation with any testimony or evidence whatsoever; in fact, he has not even testified as to *what* the mistake was. The sole evidence in the record which even relates to his allegations of a mistake was elicited on his cross-examination and is as follows:

---

[4] In Workmen's Compensation cases, where, as here, the Board takes no additional evidence, the referee is the finder of fact. *Rizzo v. Workmen's Compensation Appeal Board*, 69 Pa. Commonwealth Ct. 92, 450 A.2d 291 (1982). And, in the instant case, where the party with the burden of proof has prevailed before the referee, our scope of factual review is limited to a determination of whether or not the referee's findings are supported by substantial evidence in the record. Of course, we may review the decision below to see if any constitutional rights were violated or any errors of law were committed. *Id.*

Q. You did file what is described as a petition for reinstatement, isn't that correct?

A. Yes.

Q. Subsequent [to] or after the filing of the petition for reinstatement you signed what was described as a supplement [al] agreement, isn't that correct?

A. Yes.

Q. You signed that on the advise [sic] of your attorney, did you not?

A. That's right.

Q. And your attorney explained to you what that meant, did he not?

A. Yes. *But I didn't understand it.*

Q. You did understand that you were paid $60.00 per wk.?

A. Yes.

Q. You did understand that supplemental agreement indicated that you were *redisabled,* isn't that correct?

A. Yes.

Q. After that time you again consulted an attorney and filed a new petition to review your compensation agreement through Mr. Peleak, is that correct?

A. Yes.

Q. What were your reasons for filing that petition?

A. *There was a mistake somewhere.*

Q. How did you become aware of the mistake?

A. By one of the insurance adjusters.

Q. Do you recall who the insurance adjusters [sic] was?

A. Brough.

Q. Do you recall what company he was from?

A. Kemper Insurance.

Q. Did he advise you about the supplemental agreement?

A. He said if you were injured in '72 you could be getting more.

Q. After hearing that you decided to come in and allege you were injured after 1972, isn't that correct?

A. Yes.

Q. But up to that time you made no allegations that you were injured?

A. *I didn't know it.*

(Emphasis added.)

Here, where the claimant merely asserts that "there was a mistake somewhere," and offers no support or explanation for his statement that he "didn't understand" the supplemental agreement, he has not met his burden of proving the allegations upon which he relies.[5] *Wilkes-Barre.* We are convinced that the referee's finding regarding whether or not the supplemental agreement was "incorrect in any material respect" is not supported by substantial evidence in the record. And, inasmuch as the claimant has consequently failed to meet his burden of proving that the supplemental agreement was incorrect in any material

---

[5] We also note that the claimant has offered no explanation for his filing of a petition for reinstatement of compensation, in which he alleged that his disability had "recurred", instead of filing a petition for compensation payable, which is the petition for compensation for a *new* injury. Said petition, which was signed by the claimant, contained the statement that "a petition for reinstatement of a compensation agreement or award is intended to be used when there has been a recurrence of disability. . . ."

Furthermore, with the advice of counsel, the claimant voluntarily signed the supplemental agreement of August 16, 1973, in which he was listed as "redisabled." Again, he offers no explanation relating to specifically *what* was incorrect in this supplemental agreement, or what the nature of the mistake was.

respect, it was error for the referee to modify or set aside the agreement. Section 413 of the Act.

We will affirm the order of the Board.

### ORDER

AND Now, this 29th day of April, 1983, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.